KWIK–CHECK REALTY CO., INC., Petitioner,

v.

BOARD OF ADJUSTMENT OF NEW CASTLE COUNTY, et al., Respondents (two cases).

John P. THOMPSON and E. M. Monk, Trustees of the Southland Employees Trust, Petitioners,

v.

BOARD OF ADJUSTMENT OF NEW CASTLE COUNTY et al., Respondents.

Superior Court of Delaware, New Castle.

Submitted Dec. 7, 1976.

Decided Jan 24, 1977.

Walter P. McEvilly, Jr., and Jan S. Black, of Prickett, Ward, Burt & Sanders, Wilmington, for petitioners.

Joseph M. Bernstein, New Castle County Dept. of Law, Wilmington, for respondents.

WALSH, Judge.

This is a consolidation of three appeals from decisions of the Board of Adjustment of New Castle County denying variances from commercial zoning regulations. Appellants are owners of three "Seven-Eleven" convenience stores seeking to install self-service gasoline facilities on their respective properties. Of the parcels involved, one is zoned C–1, (neighborhood businesses) and two are zoned C–2, (roadside businesses). Appellants seek a use variance for the C–1 property and area variances for the C–2 properties.

Turning first to the C–1 property, appellants argue the denial of a use variance was improper for two reasons. First, the Board properly may consider an application for a use variance and need not require a change of the zoning classification by County Council. Second, they argue that a statutory scheme permitting full service gas stations in both C–1 and C–2 classifications, but permitting self-service facilities only in the less restrictive C–2 classification is, at best, a legislative oversight and therefore unconstitutional as an arbitrary exercise of the police power.

■ With respect to appellant's constitutional argument, it should be noted that while a special exception is needed for full service stations in areas zoned C–1, both full service and self-service stations

are unconditionally permitted in areas zoned C–2 and C–3. Although not determinative alone on the question of constitutionality, it is an indication that the County Council, in establishing a land use plan unconditionally permitting service stations in general commercial areas, but providing for strict control over their proliferation in neighborhood shopping areas, distinguished between neighborhood commercial uses and uses in other commercial areas. It is beyond doubt that this is a proper exercise of the police power. *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L.Ed. 303 (1926). Likewise, I am unable to say that the Council, in the exercise of its police power, cannot limit self-service gas facilities to commercial areas other than neighborhood. Before a zoning ordinance can be declared unconstitutional, it must be demonstrated that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. *Dukes v. Shell Oil Company,* 40 Del.Ch. 174, 177 A.2d 785, *aff'd.,* 40 Del. Ch. 396, 183 A.2d 572 (1962). Although no legislative history appears in the record, the Council could have determined that the hazards of permitting customers to pump gas were greater in neighborhood shopping areas then in less densely populated roadside business and general business areas. Thus a rational basis in public safety can be said to exist.

■ Appellant's other argument is that the Board failed to rule on the merits of the application because it erroneously believed it did not have the power to grant a use variance. While the Board's reasons for denying the application in this regard are questionable, its decision must be affirmed. The statutory authority for granting variances is contained in 9 Del.C. § 1352(a)(3).[1] It provides that a variance

---

1. "In specific cases, such variance from the provisions of any zoning ordinance, code or regulation that will not be contrary to the public interest, where owing to special conditions or exceptional situation, a literal inter-

pretation of the provisions of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regula-

may be granted when a literal application of a zoning regulation results in unnecessary hardship or exceptional practical difficulties to an owner of property. Although the hardship test is a disjunctive one and appears to permit the Board to grant a variance upon a showing of exceptional practical difficulties alone, many courts faced with similar statutes have applied a more stringent test to use variances, recognizing that a use variance changes the character of the zoned district by permitting a proscribed use. See, 3 *Anderson, American Law of Zoning*, § 14.45, *et seq.* (1968). Appellant contends that this Court's unreported decision in *Auld v. Pilcher v. Fraternal Order of Eagles*, C.A. No. 5025 (decided December 28, 1973), controls this case and that the proper test in Delaware is the less burdensome one of exceptional practical difficulties. The parcel to which the variance was directed in *Auld* was a virtually landlocked, poorly-drained lot, unsuitable for residential use but owned by a lodge which sought to extend its parking lot to placate the complaints of other residential property owners. *Auld* merely recognized the change effected by the new statute with respect to the practical difficulties of ownership in relation to the innate physical characteristics of land.

A review of the presentation by the appellant before the Board discloses that appellant's sole reason for seeking a variance is to place it in a better competitive position *vis-à-vis* a nearby convenience store that offers self-service gasoline and thereby increase profits. Clearly, this is not sufficient to prove unnecessary hardship as that phrase has been construed by the Delaware Supreme Court. *Searles v. Darling*, Del.Supr., 7 Terry 263, 83 A.2d 96 (1951). In *Homan v. Lynch*, Del.Supr., 1 Storey 433, 147 A.2d 650, 654 (1959), the Court applied an unnecessary hardship test and stated:

"Economic hardship *alone*, that is, the fact that the owner could use the property more profitably if the variance were granted, is not enough in itself to justify a variance, particularly if the owner had bought the property with full knowledge of the zoning restrictions." [Emphasis in original].

Appellant admittedly bought the property with full knowledge it was zoned C–1. I conclude, therefore, that appellant has not demonstrated unnecessary hardship or exceptional practical difficulties related to its ownership. The Board's decision with respect to the C–1 parcel is affirmed.

A different problem is presented by the C–2 parcels. Appellants request area variances from Section 23–32(29) of the Zoning Code, which imposes special requirements upon automobile service stations, self-service stations, and public garages in areas zoned C–2. Appellants' theory is that the special area requirements may properly be applied only to that portion of the property being used for the self-service facilities, and, therefore, the requested variances should be measured from the gas pumps rather than the buildings. Appellants also argue that even if the entire lot is subject to the special requirements, they are entitled to a variance because the Board improperly applied 9 Del.C. § 1352(a)(3), the variance power enabling statute.

■ Appellants' contention, that the special area dimensions should be measured from the gas pumps, is unavailing. Evidence presented to the Board indicated that metering and control devices for the pumps would be placed in the supporting retail store and that an attendant inside the store would be responsible for monitoring the devices and accepting payment for gas. I am unable to distinguish this arrangement from any other gas dispensing facility to

tion shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the

public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map."

which these special area requirements apply. The rationale for special setback, sideyard, rear yard and area requirements for automobile service stations is public protection from the inherent dangers of dispensing a highly volatile and flammable liquid. These dangers exist regardless of whether the facility is a full service station, self-service station, or self-service pump operating from a retail store. Thus, the Board properly held the area requirements applied to the entire lots and the existing buildings.

Appellants' other argument is that the Board improperly applied an unnecessary hardship standard to their requests for area variances. As an alternative argument, they contend the Board's findings are conclusory and not based on substantial evidence.

■ In its findings in these two cases, it is apparent the Board believed appellants had to prove that no permitted use of their land was possible under existing area requirements. In effect then, the Board required a showing of unnecessary hardship approaching an unconstitutional taking before it would approve a variance. However, a narrow reading of § 1352 is not warranted in requests for area variances. As noted earlier, many states apply a strict standard to use variances, recognizing that they change the character of the land, while a less burdensome test is applied to area variances since:

"Area variances are customarily concerned with 'practical difficulty', i. e., that the property or a structure thereon cannot, as a practical matter, be used for a permitted use without coming into conflict with certain of the restrictions of the ordinance such as sideyard, rear yard, setback or area restrictions or those affecting bulk or density." 2 *Rathkopf, The Law of Zoning and Planning,* 45–2 (1973 Supp.)

As noted in *Auld,* subsection (a)(3) of § 1352 sets forth two grounds for granting a variance: unnecessary hardship or exceptional practical difficulties. The proper test to be applied to area variances is one of whether a literal interpretation of the zoning law results in exceptional practical difficulties of ownership. The Board contends, however, that even if the "exceptional practical difficulties" test is applied in this case, appellants' reason for seeking the variances is to maximize profits, a reason found insufficient in *Homan.* In that case, however, the Supreme Court applied a test of unnecessary hardship—the sole statutory standard then in effect. Additionally, I am not convinced that a desire to upgrade a business, remain competitive and increase profits is never a sufficient reason for seeking a variance from area restrictions on the ground of "exceptional practical difficulties", particularly where the dimensional variances requested, are minimal changes. This is especially true where the harm which will be suffered by an applicant, if prohibited from engaging in a permitted use on his land, may be greater than the probable effect on neighboring property if the variance is granted. To make this determination, the Board is required to

" . . . take into consideration the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would have a tendency to create hardship (to any extent) to the owner in relation to his efforts to make normal improvements in the character of that use of the property which is a permitted use under the use provisions of the ordinance." 2 *Rathkopf, The Law of Zoning and Planning,* 45–29 (1972).

There is no indication that the Board considered any of these factors in concluding that the variances should not be granted.

The Board next argues that to grant the variances would be of substantial detriment to the public welfare. Even if the appellants have shown exceptional practical difficulties, the argument goes, the variances cannot be granted if they result in substantial detriment to the public good. In the Board's words, "the varying of the special requirements necessary in order to create a second primary use on property of marginal magnitude would, in the Board's opinion, be of substantial detriment to the public safety and welfare."

■ Viewed in the abstract, the Board's argument has merit and is fully consistent with § 1352. In these cases, however, the Board's findings are conclusory in the language of the statute. Obviously, to grant the variances would result in approving permitted uses on parcels of land not meeting area requirements for those uses. Yet, this is exactly what the Board is called upon to do whenever a request is made for an area variance. The public welfare is not threatened merely because a landowner seeks approval to make use of his property in a way permitted under the zoning classification for that property. In denying requests for variances from area requirements, the Board may not base its conclusion on a finding that area variances, *per se,* result in substantial detriment to the public good. The Board must particularize in terms of findings of fact, as well as conclusions of law, to enable this Court, in the exercise of its function of appellate review, to determine if substantial evidence supports such findings. Cf. *Cooch's Bridge Civic Ass'n v. Pencader Corporation,* Del.Supr., 254 A.2d 608 (1969); *Fisher v. Pilcher,* Del.Super., 341 A.2d 713 (1975).

■ I conclude that the two applications for area variances must be remanded to the Board for further consideration in view of the deficiencies noted. I also note that the Board's opinions in these two cases follow one standardized recital of administrative conclusion. Although similar in effect, each variance is directed to separate locations, several miles apart. There are undoubtedly factors which are unique to each location. Each application must be considered on its merits and measured against the impact on a particular setting. Accordingly, the Board is requested to make separate findings with respect to each application.

In summary, the Board's decision with respect to the use variance is affirmed while its decision on the area variances is remanded for further proceedings.

IT IS SO ORDERED.