# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

ELIZABETH SNYDER and SAVE,
OUR DELAWARE BYWAYS, INC.,

Plaintiffs in Error,

v.

NEW CASTLE COUNTY, NEW
CASTLE COUNTY BOARD OF
ADJUSTMENT, NEW CASTLE
COUNTY DEPARTMENT OF LAND
USE, and MARY K. CARPENTER
TRUST,

Defendants in Error.

)
)
)
)
)
)
)
) C.A. No. N14A-05-003 FWW
)
)
)
)
)
)
)
)
)
)
)

Submitted: May 21, 2015
Decided: August 24, 2015

Upon Plaintiffs in Errors' Petition for Writ of *Certiorari*
**AFFIRMED.**

## OPINION AND ORDER

Christopher S. Koyste, Esquire, Law Office of Christopher S. Koyste, LLC, 709 Brandywine Blvd., Wilmington, Delaware, 19809, Attorney for Petitioners.

Richard A. Forsten, Esquire and Wendie C. Stabler, Esquire, Saul Ewing, LLP, 222 Delaware Ave., Suite 1200, Wilmington, Delaware 19801, Attorneys for Defendant, Mary K. Carpenter Trust.

Brian J. Merritt, Esquire and Julie M. Sebring, Esquire, 87 Reads Way, New Castle, Delaware 19720, Attorneys for Defendants New Castle County Dept. of Land Use, and New Castle County Bd. of Adjustment.

**WHARTON, J.**

# I.    INTRODUCTION

This action concerns a proposed residential land development project by the Mary K. Carpenter Trust ("Applicant") to subdivide a parcel of land located at 206 Montchanin Road, Wilmington, Delaware 19710 ("Property"). The proposed plan would allow for a cluster of homes for owners 55-and-older to be developed on a portion of the Property. The proposed plan required the approval of New Castle County Council ("County Council") to rezone the property and the New Castle County Board of Adjustment ("Board") for five area variances. County Council voted to rezone the property from Suburban Estate ("SE") zoning to Suburban ("S") zoning. Applicant filed an "Application for Public Hearing" ("Application") with the Department of Land Use ("Department") for a hearing before the New Castle County Board of Adjustment ("Board") regarding five area variance requests to depart from the requirements of the Unified Development Code ("UDC").

Elizabeth Snyder and Save Our Delaware Byways, Inc. ("Petitioners") filed an Amended Petition for Writ of *Certiorari* on May 12, 2014 requesting judicial review of the Board's April 21, 2014 decision regarding the Application. Petitioners challenge the Board's jurisdiction to hear the Application and the Board's decision to grant five area variances with respect to the Property. An

2

Order allowing the writ of *certiorari* was granted on May 13, 2014. On February 24, 2015, the case was reassigned to this Judge.

In considering a writ of *certiorari*, the Court must determine whether the Board exceeded its jurisdiction in approving the Application and whether the Board's decision to grant the variances for the Property was illegal or contrary to law. Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board did not exceed its jurisdiction and that the Board's decision was neither illegal nor contrary to law. Accordingly, the Board's decision is **AFFIRMED**.

## II.    FACTUAL AND PROCEDURAL CONTEXT

On December 30, 2013, the Department received Applicant's Application requesting a public hearing before the Board regarding the Property.[1] Applicant requested that the Board grant five area variances needed to effectuate the overall development plan for the Property which was to rezone approximately 12 of the 20 acres to provide for a 55-and-older "open space/cluster community to consist of twelve (12) custom, 'cape-style' homes on 1/3-1/2 acre lots."[2] Specifically, Applicant requested that the Board approve the following variances:

> 1. to provide 0 bufferyard opacity along a portion of the southerly lot line shared with tax parcel number 07-027.00-056 (proposed minimum buffer width of 5-

---

[1] *See* Application to Board of Adjustment.
[2] *Id.* at 3.

3

feet) 150 feet from SR 100 in an easterly direction along the share [sic] lot line with tax parcel number 07-027.00-056 (0.2 minimum bufferyard opacity);

2. to allow protected resources (mature forests) in a conservation easement to be located on Lot 13 (protected resources shall not be located on an individual lot pursuant to Section 40.20.225.B.1);

3. to allow protected resources (mature forest and riparian buffer) in a conservation easement to be located on Lot 14 (protected resources shall not be located on an individual lot pursuant to Section 40.20.225.B.1);

4. to provide zero (0) percent open space for Lot 13 (5 percent minimum open space ratio for SE-zoned land and open space shall be contained on a separate parcel) [sic] Protected resources will be provided on Lot 13 and will be protected by a conservation easement; and

5. to provide zero (0) percent open space for Lot 14 (5 percent minimum open space ratio for SE-zoned land and open space shall be contained on a separate parcel) [sic] Protected resources will be provided on Lot 14 and will be protected by a conservation easement.[3]

The Department notified Applicant that the Application was scheduled to be heard at the Board's February 13, 2014 meeting.[4] On February 7, 2014, Petitioners submitted various materials in opposition to the Application for the Board's review

---

[3] *Id.* at 2.
[4] *See* Letter from the Department of Land Use dated January 21, 2013 [sic].

in advance of the hearing.[5] The meeting was rescheduled for March 13, 2014.

On February 24, 2014, Petitioners submitted additional documents for the Board's review prior to the March 13, 2014 hearing, including a letter asserting that the Application cannot proceed because of various defects in the Application ("February 24, 2014 Letter").[6] Specifically, Petitioners asserted that "the Application has not been properly noticed for a New Castle County Board of Adjustment ("Board") hearing and the Applicant has not submitted an Exploratory Plan in accordance with County Code as required for each Board hearing due to the lack of Ms. Snyder's signature on Applicant's submissions."[7] The February 24, 2014 Letter, addressed to the "Members of the Board of Adjustment" and the "New Castle County Department of Land Use," begins with the salutation "Dear Members of the Board of Adjustment" and concludes with the following request:

> I ask that you issue a written determination no later than Monday, March 3, 2014 as to whether: a) the Application must be removed from the March 23, [sic] 2014 agenda because the County has made a determination that the Board cannot hear the variance application for the reasons noted; or b) the Application can proceed forward as the County has issued a determination as to each of the above argued inconsistencies with UDC requirements, with said determination outlining the County's reason for reaching its conclusion in relation to each of the noted UDC sections. All interested parties can then determine

---

[5] *See* Letter to Members of the Board of Adjustment of New Castle County dated February 7, 2014 and accompanying Exhibits.

[6] *See* February 24, 2014 Letter to Members of the Board of Adjustment and the New Castle County Department of Land Use and accompanying Exhibits.

[7] *Id.*

with due advance notice how to best protect their rights. If the Department of Land Use does not remove the Application from the March 13, 2014 agenda, Ms. Snyder preserves her right to raise the above referenced objections at any hearing held or alternatively appeal such determination in accordance with Section 1313(a)(1) of Title 9 of the Delaware Code: 'The Board of Adjustment is empowered to hear on and decide: [a]ppeals in zoning matters when error is alleged in any order, requirement, decision or determination made by an administrative officer or agency…' and also in accordance with Section 30.110 of the Unified Development Code.[8]

Prior to the March 13, 2014 hearing, a Planner from the Department issued a "Recommendation Report to the Board of Adjustment" in which the Planner detailed the reasons that the Department recommended that the Board grant the requested variances ("Recommendation Report").[9] The Recommendation Report indicates that the Department is in support of the variances for several reasons including, *inter alia*, that the overall plan allows for a "superior design." The Recommendation Report did not require that Ms. Snyder or any other neighbor sign the plan or Application.[10]

## A. The March 13, 2014 Board Hearing

The Board held a hearing on the Application on March 13, 2013. As an initial matter, the Board considered Petitioners' preliminary procedural issue

---

[8] *Id.*
[9] *See* Recommendation Report to the Board of Adjustment.
[10] *Id.*

outlined in the February 24, 2014 Letter.  Petitioners argued that the Board lacked

jurisdiction to hear the Application because the Department failed to provide a

written response to the February 24, 2013 Letter.[11]  In support of their contention,

Petitioners relied upon a May 23, 2013 "Department of Land Use Revised

Exploratory Plan Report" regarding a project named "Independence Towns"

("Comment Letter").[12]  Petitioners asserted that the Comment Letter involved an

analogous factual situation in which the Department determined that an entrance

right of way was so close to the neighboring property that it would affect the

neighboring property rights such that the application could not proceed without the

---

[11] *See* Tr. at 8-9:

> [Counsel for Petitioners]: …[Petitioner] requested Land Use to
> give a written response to this because we believe that the proper
> procedures first Land Use should not have even put it before you
> all without following your procedures that you voted on…If [Land
> Use] would have ruled there was not jurisdiction ah [sic] that there
> was jurisdiction of the Board we would have then appealed that
> decision to you the Board of Adjustment.  But [Land Use] didn't
> do that…

[12] *See* February 24, 2014 Letter to Members of the Board of Adjustment and the New Castle
County Department of Land Use, at Ex. 1; *See also* Tr. at 16:

> [The Board]: …[T]he sole authority as I understand that you are
> citing is a May 23, 2013 Department of Land Use revised
> exploratory plan report in a different project in which the
> determination was made that the submittal has been found
> unacceptable.  And one of the paragraphs mentions that because
> the street yard setback would create more more [sic] restricted
> building envelope the owners of the and I'm quoting 'adjoining
> parcels will need to sign future SDL1 applications and the record
> plan'.  Is that correct?  Is that the sole authority you are citing?
>
> [Counsel for Petitioners]:  Yes.

7

affected neighbor's signature on the application.[13] Petitioners contended that the

Comment Letter was binding precedent on the Department.[14]

Additionally, Petitioners argued that the Board lacked jurisdiction to hear the

Application because "the County reg's [sic] that need to be filed, followed before

---

[13] *See* Tr. at 9-11:

> [Counsel for Petitioners]:…[W]hat [the Department] determined is that a property in which a proposed right of way it would impose a street yard building setback on an adjacent property which is exactly what we have here. [The Department] require[s] since the street yard setback would create a more restricted building envelope the owners of the adjoining parcels will need to sign further SLD applications and [the applicant's] record plan…I believe this [application] was not allowed to proceed forward…
>
> [The Board]: Does it say that in [the Comment Letter]?
>
> [Counsel for Petitioners]: I believe if you look through the entirety of it…The revised exploratory submittal has been found unacceptable…That meant [the application] could not proceed forward. Just like the Board of Adjustment application cannot.
>
> [The Board]: Well so I gather your [sic] tying this one statement in paragraph number one about needing to sign a future SLD1 to that summary statement under status of review and attributing the finding and status of review to that one factor. Is that correct?
>
> [Counsel for Petitioners]: Yes.
>
> [The Board]: Is there something in here that says that?
>
> [Counsel for Petitioners]:…[W]e have a holding. It's not structured as a legal opinion. But the basic holding is the status of review. It's been found unacceptable. It means [the application] can't proceed forward. This case here exact same situation[. I]t's an entrance right of way. It's so close to this neighboring property. It's going to affect [Ms. Snyder's] property in the future.

[14] *See Id.* at 17: ("[The Board]:…Are you saying that past precedent, past actions [by the Department] which may have set precedent is a guide for all future actions? …[Counsel for Petitioners]: It certainly would be when [the Department is] making a determination.").

anything gets to [the Board] haven't been followed. [The Application] shouldn't have been noticed [for a public hearing]."[15] Petitioners also asserted that the Department of Land Use's lack of written response to the February 24, 2014 Letter deprived Petitioners of the opportunity to appeal a final determination to the Board.[16] Petitioners ultimately requested that the Board determine that it lacked jurisdiction to hear the Application until the Department issued a written decision in response to the arguments outlined in the February 24, 2014 Letter.[17]

Applicant argued that the Board's rules and the UDC do not deem the Application deficient without Ms. Snyder's signature because the Comment Letter lacks precedential value based upon the factual circumstances of the Application.[18] Applicant also argued that Petitioners would face no prejudice if the Board ruled on the jurisdictional issue at the hearing and asserted that the Board should proceed

---

[15] *Id*. at 12.

[16] *See Id.*:

> [The Board]: So if Land Use were to issue a written determination that at that, the southerly neighbor's signatures [sic] not require [sic] on an SDL1 in order for the matter to proceed before the Board of Adjustment that would remove the procedural irregularity for now and maybe leave you with a future issue?
>
> [Counsel for Petitioners]: It would have left us with an immediate issue. That I would have filed an appeal to the Board of Adjustment and I would have argued they are not even following their own procedures.

[17] *See Id.* at 15: ("[Counsel for Petitioners]:…I ask [the Board] to vote that [the Board] lack[s] jurisdiction procedurally because the County has not made a written determination in order to put [the Application] properly before [the Board]…").

[18] *See Id*. at 17-18 ("[Counsel for Applicant]: [The Comment Letter] was a completely different situation and, therefore, even if [the Comment Letter] did have precedential value it would not be binding here.").

on the substance of the Application.[19]  Applicant asserted that Petitioners had preserved the right to appeal the Board's jurisdiction by raising the argument at the hearing.[20]

After hearing the arguments presented, the Board recessed for an executive session to "get some legal advice first."[21]  Upon reconvening, the Chairman of the Board announced

> …We have in effect a motion for a continuance to permit the procedures suggested by an objecting member of the public who is represented by counsel or members I guess. And we have a response and some discussion on that. We have a response to that an argument made by the applicant and that's all on the record.  And I don't feel a need to review it in any detail.  I as Chair have the responsibility of determining in many instances when it's necessary to take testimony and when it isn't.  And in this instance I feel there's been enough argument. There's not a need for any additional record on this issue so we won't be taking any testimony with regard to the procedural issue ahead of us…[22]

The Board unanimously voted that it had jurisdiction to hear the Application.[23]

---

[19] *Id.* at 18.
[20] *Id.*
[21] *Id.* at 19.
[22] *Id.*
[23] *See Id.* at 19-20:

> [Chairman of the Board]:  On the question of whether the Board can hear this application this evening the argument I believe boils down [sic] whether or not we have jurisdiction on the basis of the prior Land Use prouncement [sic] that we were discussing earlier. And the record contains the arguments of both of the interested parties.  I believe it is sufficient for us in this instance to determine as probably a simple matter of procedure which is the prerogative

Following the Board's jurisdictional determination, the Board heard testimony regarding the merits of the Application. The record indicates that the Board heard argument from the parties, gathered evidence, asked questions and heard comments from several members of the public. At the conclusion of the hearing, the Board voted to conditionally approve the five proposed variances.[24]

## B.     The Board's April 21, 2014 Written Decision

In the Board's written decision, filed April 21, 2014, the Board detailed the procedural argument raised by Petitioners and concluded that

> [Counsel for Petitioners'] allegations of violation of statute or rules are not supported by facts before the Board. [Counsel for Petitioners] supported his argument with a sole purported authority: a finding in a Department of Land Use comment letter that discussed the impact of a new road on an adjacent property to the project.[25]

The Board found that

---

> of the Chair that the Board will proceed and has jurisdiction…so I'm going to make a motion, if there is a second we'll…take a vote and depending on the outcome of that vote we'll proceed. So I'm going to move that the Board assert jurisdiction over this matter and proceed this evening.
>
> [Board Member]: Second…
>
> [Chairman of the Board]: …All in favor?
>
> …(Everybody said aye)…
>
> [Chairman of the Board]: Opposed? None.   Okay lets [sic] proceed."

[24] *Id.* at 130.
[25] Notice of Decision, at 2.

> [the Comment Letter] involved a different project, different parcels, and different factual circumstances. This application contains no such comment letter from Land Use. Land Use is required by the UDC to review this project and, in doing so, did not issue a deficiency letter stating that an adjacent landowner's signature was required. The Board is satisfied that the requirements of [the] UDC with respect to the necessity for Mrs. Snyder's signature on the documents, and the notice of this application, have been met…[26]

Based upon that explanation, the Board found that it "is satisfied that the requirements of [the] UDC with respect to the necessity for Mrs. Snyder's signature on the documents, and notice of this application, have been met…"[27]

Next, the Board discussed the five requested variances and detailed the testimony regarding the variances, including the comments the Board received from the public. The Board voted to approve conditionally the five variances and concluded that "'[a] literal interpretation of the zoning law results in exceptional practical difficulties of ownership.'"[28] The Board relied upon provisions in the UDC and *Bd. of Adjustment of New Castle Cnty. v. Kwik-Check, Inc.*, 389 A.2d 1289 (Del. 1978).

The Board's decision, provides, *inter alia*, that

> …[t]he subject property…is located on the southern end of an extensive SE (Suburban Estate) zone that projects

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 7 (quoting *Kwik-Check Realty, Inc. v. Board of Adjustment of New Castle County*, 369 A.2d 694, 698 (Del. Super. 1977)).

northward to the Pennsylvania state line, which includes large lot residential properties, the museum properties and land for both Hagley and Winterthur museums, protected public open space of the Brandywine Creek State Park, and other large conservation areas owned by Woodlawn Trustees (1100 acres of which was designated in early 2013 as a National Monument within the National Park System). Positioned at the southern end of Route 100, the subject parcel is in a transitional area and has significant links to both the developed area near Route 141 (including the Greenville area) and the wide open landscapes and roadways that have evolved over the last several hundred years and are now associated with the Brandywine Valley National Scenic Byway…[29]

Additionally, in the written decision, the Board concluded that

[t]he requested variances fall into three groupings: the access road, the conservation easements, the allocation of protected resources. Development of homes is permitted on this land whether the zoning is S or SE. For compelling safety reasons DelDOT has stated that the access road should be located opposite of Montchan Drive, a determination reached regardless of the size of the project. Location of the access road, therefore, is not a self-created hardship. The protected resources are inherent in the land and the Applicant is attempting to ensure that those resources are well-maintained by the use of the conservation easements. There is little or no negative impact by this project on Mrs. Snyder's narrow strip of land that is adjacent to the subject property. The character of the community is maintained by the proposed project. The scenic byway is protected by the unusual size of the 125 foot buffer filled with plantings…

The unique conformation of the property, the unique relationship of the existing dwellings and outbuilding to one another and to the varied topography and to the

---

[29] *Id.* at 3.

13

existing protected resources and stream in relationship to the goals of protecting these valuable resources while permitting a normal improvement by a reasonable amount of residential development on the property given the presence of necessary infrastructure to serve new development and the unique geometry of the proposed signalized intersection with Montchanin Drive [sic]…constitute a special condition and exceptional situation warranting some flexibility in the Zoning Code. The requested variances will be consistent with the character of the surrounding community. The requested relief is modest. The proposed clustered subdivision with a large percentage of open space and mature trees visible from Montchanin Road, and natural resources protected by conservation easement elsewhere on the site, indicate that the requested relief will be unlikely to adversely affect residential surrounding properties. If the zoning restrictions upon the Applicant's property were removed, the removal would not seriously affect neighboring properties. If the restrictions were not removed, it would create an exceptional practical difficulty that is inherent in the land. The granting of the variances would not substantially impair the intent or purpose of the zoning regulations. 'A literal interpretation of the zoning law results in exceptional practical difficulties of ownership.' Kwik-Check Realty, Inc., v. Board of Adjustment of New Castle Cty., 369 A.2d 694, 698 (Del. Super. 1977), aff'd, 389 A.2d 1289 (Del. 1978).

Granting the application conditionally, and removing the restriction, will not seriously affect the neighboring properties. If the variance was denied, and the restriction not removed, 'the restriction would create…exceptional practical difficulty for the owner in relation to his/her efforts to make normal improvements on the character of that use of the property which is a permitted use under the use provisions of the ordinance [involved].' Board of Adjustment of New Castle Cty. v. Kwik-Check Realty, Inc., 389 A.2d 1289, 1291 (Del. 1978). The granting of this variance will not cause substantial detriment to the

public good, nor will it substantially impair the intent and purpose of the zoning code.[30]

## C.     Petition for Writ of *Certiorari*

On May 12, 2014, Petitioners filed an Amended Petition for Writ of *Certiorari*[31] and the Court entered an Order allowing *certiorari* review on May 13, 2014.[32] Additionally, on May 12, 2014, Petitioners filed an Amended Motion for Stay and Restraining Order Pursuant to 9 *Del. C.* § 1314.[33] The Court heard the Motion on June 13, 2014 and denied the Motion on February 24, 2015.[34] On the same day, the file was reassigned to this Judge.[35] The Court held oral argument on the merits of Petitioners' Amended Petition for Writ of *Certiorari* on May 21, 2015.

## III.    STANDARD OF REVIEW

Petitioners for a writ of *certiorari* must establish that two threshold requirements are met before the Court may examine the lower tribunal's decision; namely, that the decision of the lower tribunal was a final decision and that no alternative basis for review exists.[36] The purpose of a writ of *certiorari* is to permit this Court to review the record of a proceeding decided by a lower

---

[30] *Id.* at 6-7.
[31] D.I. 8.
[32] D.I. 12.
[33] D.I. 9.
[34] D.I. 32.
[35] D.I. 33.
[36] *Maddrey v. Justice of the Peace Court 13*, 956 A.2d 1204, 1213 (Del. 2008).

tribunal.[37] Delaware law is clear that a writ of *certiorari* is not the functional equivalent of appellate review.[38] "*Certiorari* review differs from appellate review in that an appeal 'brings up the case on its merits,' while a *writ* brings the matter before the reviewing court to 'look at the regularity of the proceedings.'"[39]

The evidence before the lower tribunal is not a proper part of the record for *certiorari* review.[40] When conducting the review of the lower tribunal, this Court may not "look behind the face of the record" nor may it engage in "combing the transcript for an erroneous evidentiary ruling."[41] Additionally, reviewing the transcript from the proceeding to evaluate the basis for the lower tribunal's decision is impermissible because it "necessarily contemplates that the court will weigh and evaluate the evidence."[42] However, the Court may review the transcript only to determine the sufficiency of the proceedings.[43] As such, during this limited review, the Court may not consider the merits of the case presented to the Board nor may the Court substitute its own judgment for that of the Board.[44] That is because "[i]t is the function of 'the agency, not the court, to weigh evidence and

---

[37] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004).
[38] *Maddrey*, 956 A.2d at 1213.
[39] *395 Assocs., LLC v. New Castle Cnty.*, 2006 WL 2021623, at *3 (Del. Super. July 19, 2006) (quoting *Breasure v. Swartzentruber,* 1988 WL 116422, at *1 (Del. Super. Oct. 7, 1988)).
[40] *Maddrey*, 956 A.2d at 1216.
[41] *Id.* at 1215.
[42] *Castner v. State*, 311 A.2d 858, 858 (Del. 1973).
[43] *395 Assocs.*, 2006 WL 2021623, at *3.
[44] *Id.*

16

resolve conflicting testimony and issues of credibility.'"[45] Instead, the Court only "considers the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly."[46] Ultimately, "[t]he Court may reverse or affirm, wholly or partly, or may modify the decision brought up for review" from the Board.[47]

## IV.   DISCUSSION

Petitioners allege that the Board erred as a matter of law 1) by granting the five variances absent a showing of exceptional practical difficulty under *Kwik-Check*; and 2) by rejecting Petitioners' argument that the proper applicants did not sign the plan or the Application in violation of UDC, Appendix 1. Additionally, Petitioners allege that the Board exceeded its jurisdiction 1) because notice of the public hearing on the Application was insufficient and violated UDC Article 31; and 2) because the Board should not have proceeded to hear the merits of the Application when the Department had not issued a written decision regarding Petitioners' February 24, 2014 Letter in violation of UDC § 31.330.

As a preliminary matter, the decision from the Board was a final decision and no other basis for review exists. Therefore, Petitioners have met the threshold requirements to permit *certiorari* review. For Petitioners to prevail on *certiorari*

---

[45] *Id.* (quoting *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 1551457, at *2. (Del. Super. July 7, 2004)).
[46] *Christiana Town Ctr.*, 2004 WL 2921830, at *2.
[47] 9 *Del. C.* § 1314(f).

17

review, the Court must find that an error of law occurred because the record below shows that the tribunal "proceeded illegally or manifestly contrary to law."[48] Alternatively, Petitioners will prevail if "the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction."[49]

## A. There Are No Legal Errors Manifest on the Face of the Board's Decision.

The Delaware Supreme Court recently instructed that

> [h]istorically, a petition for a writ of *certiorari* has not allowed a reviewing court to consider the full record before the first tribunal or to conduct a plenary review of whether the tribunal committed an error of law. Only if an error of law is manifest on the face of the limited record is *certiorari* appropriate, because the writ exists to ensure that the tribunal is proceeding regularly and attempting to do its job within its legal authority.[50]

Therefore, only where the face of the record below indicates that the lower tribunal has proceeded illegally or contrary to law must the Court reverse the lower tribunal's decision for legal error.[51]

The Court has held that where the lower tribunal applies the incorrect law or foregoes procedural requirements consistent with notions of due process the lower

---

[48] *Id.*

[49] *Christiana Town Ctr.*, 2004 WL 2921830, at *2 (citing Woolley, Delaware Practice, Volume I, § 921).

[50] *Black v. New Castle Cnty. Bd. of License, Inspection and Review*, 2015 WL 3941464, at *4 (Del. June 29, 2015).

[51] *Christiana Town Ctr.*, 2004 WL 2921830, at *2.

tribunal has proceeded illegally or manifestly contrary to law.[52] Conversely, the Court "may not review the substantive decisions" nor may it "correct a mistake of facts or an erroneous conclusion from the facts, even though the [tribunal's] interpretation of the facts or law may have been erroneous."[53] The Court cannot substitute its own judgment for that of the lower tribunal.[54] The Court may not weigh evidence, disturb the lower tribunal's factual findings or decide the merits of the case.[55] Therefore, the Court shall uphold the decision of the Board unless it finds that the Board's decision is "illegal or contrary to law" on its face.[56]

1.    *The Board's Decision to Conditionally Grant the Five Area Variances Is Not Illegal or Contrary to Law.*

According to Petitioners, "[t]he Court should reverse the Board where, as here, the Board fails to identify substantial evidence to support a finding of exceptional practical difficulty under *Kwik-Check*."[57] Petitioners assert that

---

[52] *See, e.g.*, *Maddrey*, 956 A.2d at 1215 (an error of law occurs when the tribunal applies the wrong burden to the proceedings); *395 Assocs.*, 2006 WL 2021623, at *9 (the tribunal acted manifestly contrary to law when it impermissibly analogized receipt of a notice of violation with receipt of a legal complaint and applied the five-day statute of limitations to determine that the plaintiff had waived its right to assert the statute of limitations); *Lane v. Bd. of Parole*, 2012 WL 5509711, at *5 (Del. Super. Aug. 30, 2012) (the parole board erred when it required a person to register as a sex offender for a longer time period than imposed by statute based upon the Attorney General's tier classification); *State, Office of Mgmt. and Budget v. Public Emp't Relations Bd.*, 2011 WL 1205248, at *3 (Del. Super. Mar. 29, 2011) (failure to provide notice of the board hearing and provide an opportunity to be heard was error of law).
[53] *395 Assocs.*, 2006 WL 2021623, at *8 (quoting *El Di, Inc. v. Justice of the Peace Court No. 17*, 1998 WL 109823 at *4 (Feb. 20, 1998)).
[54] *Christiana Town Ctr.*, 2004 WL 2921830, at *2.
[55] *Reise v. Bd. of Bldg. Appeals of Newark*, 746 A.2d 271, 274 (Del. 2000).
[56] *Christiana Town Ctr.*, 2004 WL 2921830, at *2.
[57] Pet'rs' Opening Br., D.I. 28, at 10.

[t]he Trust did not demonstrate exceptional practical difficulty in developing the Trust Property in accordance with the UDC to the Board. Without the variances, the Trust faces no hardship related to the dimensions of the parcel itself or its topography…The 'hardship' present is personal to the Trust and financial only.[58]

In support of its argument, Petitioners assert that the five requested variances are inconsistent with the Property's zoning and scenic byways designation because "the variances run contradictory to the purpose and intent described [for SE zoning in UDC § 02.233]."[59] Petitioners also assert that the variances are inconsistent with the character of the immediate vicinity because "[l]arge estate-type homes are the exclusive housing type in the 'triangle' of land stretching from Buck Road and Route 100 to the border of the Hagley Museum, and along Route 100 which is the relevant 'immediate vicinity' the Board should have considered."[60] Petitioners contend that the variances will have an adverse effect on neighboring properties because the intersection created will be dangerous and the visual impact provides for no opacity barrier or visual buffer for Ms. Snyder's property.[61]

Applicant argues that the Board's decision is free of legal error and is supported by substantial evidence and, therefore, should be upheld. Applicant

---

[58] *Id.* at 19.
[59] *Id.* at 10-11.
[60] *Id.* at 14.
[61] *Id.* at 17-18.

20

argues that the Board properly applied the *Kwik-Check* factors and determined that the variances were appropriate.[62] Applicant argues that

> [t]he four prongs of the [*Kwik-Check*] test are easily met here. The nature of the zone of the property (prong 1) is residential and the character and use of the immediate vicinity (prong 2) is residential…if the variances are granted, the variances would not seriously interfere with neighboring property and uses (prong 3)…Meanwhile, if the variances are not granted (prong 4), access becomes less safe, buffering less substantial and the design much more 'awkward.'[63]

Petitioners' arguments regarding the variances challenge the factual determinations the Board made in reaching its decision. Petitioners essentially argue to the Court that the Board's decision was wrong and that the factual evidence does not support the Board's finding. However, to address the merits of Petitioners' arguments would be to impermissibly consider the Board's substantive determination.[64] Instead, the Court's review on *certiorari* is limited to whether the Board made a legal error that is manifest on the face of the record.[65]

Pursuant to 9 *Del. C.* § 4917, the Board may allow a variance where the

> strict application of any regulation adopted…would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property…provided such relief may be granted

---

[62] Defs.' Answering Br., D.I. 30, at 20.
[63] *Id.*
[64] *395 Assocs.*, 2006 WL 2021623, at *8 (quoting *El Di, Inc. v. Justice of the Peace Court No. 17*, 1998 WL 109823 at *4 (Feb. 20, 1998)).
[65] *See, e.g.*, *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1215 (Del. 2008); *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1106 (Del. 2003).

without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan and zoning regulations.[66]

In determining whether an exceptional practical difficulty exists for purposes of examining applications for area variances, the Delaware Supreme Court has instructed the Board to consider the following factors:

the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements in the character of that use of the property which is a permitted use under the use provisions of the ordinance.[67]

Therefore, to the extent that the record shows that the Board properly considered the *Kwik-Check* factors and applied 9 *Del. C.* § 4917, the Court's limited inquiry on *certiorari* review ends.

In the Board's written decision, the Board detailed the testimony it received regarding the five variances, including the comments from the public. The Board grouped the variances into three separate categories for analysis purposes: the

---

[66] 9 *Del. C.* § 4917(3).
[67] *Bd. of Adjustment of New Castle Cnty. v. Kwik-Check Realty, Inc.*, 389 A.2d 1289, 1291 (Del. 1978).

22

access road, the conservation easements and the allocation of protected resources.[68] The Board voted to conditionally approve the variances and concluded that "'[a] literal interpretation of the zoning law results in exceptional practical difficulties of ownership.'"[69] The Court finds that, in reaching that conclusion, the record affirmatively shows that the Board considered the *Kwik-Check* factors.

The Board considered the nature of the zone in which the property lies. In the written decision, the Board found that "[d]evelopment of homes is permitted on this land whether the zoning is S or SE."[70] The Board also found that "[t]he issue as to whether the Board can hear this application before the rezoning has been considered by County Council is not a critical issue because the requested variances could be considered by this Board whether the property is zoned S or SE, in either case."[71]

Additionally, the Board considered the character of the surrounding area where the written decision provided that

> [t]he subject property…is located on the southern end of an extensive SE (Suburban Estate) zone that projects northward to the Pennsylvania state line, which includes large lot residential properties, the museum properties and land for both Hagley and Winterthur museums, protected public open space of the Brandywine Creek State Park, and other large conservation areas owned by

---

[68] Notice of Decision, at 6.
[69] *Id.* at 7 (citing *Kwik-Check Realty, Inc. v. Bd. of Adjustment of New Castle Cnty.*, 369 A.2d 694, 698 (Del. Super. 1977)).
[70] *Id.* at 6.
[71] *Id.*

> Woodlawn Trustees (1100 acres of which was designated in early 2013 as a National Monument within the National Park System). Positioned at the southern end of Route 100, the subject parcel is in a transitional area and has significant links to both the developed area near Route 141 (including the Greenville area) and the wide open landscapes and roadways that have evolved over the last several hundred years and are now associated with the Brandywine Valley National Scenic Byway.[72]

The Board found that "[t]he requested variances will be consistent with the character of the surrounding community."[73]

The Board also considered the impact the variances would have upon neighboring properties. In the Board's written decision, the Board found that "[t]here is little or no negative impact by this project on Mrs. Snyder's narrow strip of land that is adjacent to the subject property."[74] The Board also found that "[t]he proposed clustered subdivision with a large percentage of open space and mature trees visible from Montchanin Road, and natural resources protected by conservation easement elsewhere on the site, indicate that the requested relief will be unlikely to adversely affect residential surrounding properties."[75]

Finally, the record shows that the Board considered the size, configuration, topography or other physical characteristic inherent in the land. The Board's written decision provides that "[t]he Applicant is suffering exceptional practical

---

[72] *Id.* at 3.
[73] *Id.* at 7.
[74] *Id.* at 6.
[75] *Id.* at 7.

difficulty because any ability to develop this land is hindered by its natural and

existing topography, including the riparian buffer and other resources, the

bordering roadways, the existing buildings, and the mature landscaping on the

subject parcel."[76] The decision also provides that "[t]he protected resources are

inherent in the land and the Applicant is attempting to ensure that those resources

are well-maintained by the use of the conservation easements."[77]  The Board's

decision concludes that

> [t]he unique conformation of the property, the unique
> relationship of the existing dwellings and outbuilding to
> one another and to the varied topography and to the
> existing protected resources and stream in relationship to
> the goals of protecting these valuable resources while
> permitting a normal improvement by a reasonable
> amount of residential development on the property given
> the presence of necessary infrastructure to serve new
> development and the unique geometry of the proposed
> signalized intersection with Montchanin Drive
> [sic]…constitute a special condition and exceptional
> situation warranting some flexibility in the Zoning
> Code.[78]

Based upon the aforementioned excerpts from the Board's written decision,

it is apparent that the Board considered all of the factors that *Kwik-Check* mandates

that the Board consider.  Additionally, as required by 9 *Del. C.* § 4917(3), the

Board made a finding that granting the variances "will not cause substantial

---

[76] *Id.* at 6.
[77] *Id.*
[78] *Id.* at 7.

detriment to the public good, nor will it substantially impair the intent and purpose of the zoning code."[79] Therefore, the Court finds that the Board's decision is not illegal or contrary to law because it is manifest on the face of the record that the Board considered all of the relevant factors under *Kwik-Check* and the applicable statute.

2.   *The Board Did Not Act Illegally or Contrary to Law When It Approved the Application Without Ms. Snyder's Written Consent to the Plan and Application.*

Petitioners also argue that the Board erred as a matter of law when it proceeded to hold the March 13, 2014 public hearing on the Application despite the absence of Ms. Snyder's signature on the plan and Application.[80] In support of Petitioners' argument, Petitioners solely rely upon the Comment Letter that was presented to the Board.[81] Petitioners assert that that the Board impermissibly rejected the Comment Letter because the Comment Letter is precedent by which the Department is bound to require Ms. Snyder's signature on the plan and Application before the Board can hold a public hearing on the Application.[82]

Applicant argues that Petitioners' reliance upon the Comment Letter is misplaced because the Comment Letter lacks precedential value.[83] Applicant asserts that the Department is not bound by the determination made in the

---

[79] *Id.*
[80] Pet'rs' Opening Br, at 22.
[81] *Id.* at 22-23.
[82] *Id.*
[83] Defs.' Answering Br., at 23.

26

Comment Letter because the facts of that case were materially different than the facts surrounding the Application.[84] Specifically, Applicant contends that the Comment Letter was issued because the Department determined that setbacks for neighboring properties would be detrimentally affected; however, here the evidence presented to the Board is that there is no new setback or additional setback imposed on Ms. Snyder's property.[85]

The Board rejected Petitioners' argument in its written decision when it found that

> [Petitioners'] allegations of violations of statute or rules are not supported by facts before the Board. [Counsel for Petitioner] supported his argument with a sole purported authority: a finding in a Department of Land Use comment letter that discussed the impact of a new road on an adjacent property to the project. That letter involved a different project, different parcels, and different factual circumstances. This application contains no such comment letter from Land Use. Land Use is required by the UDC to review this project and, in doing so, did not issue a deficiency letter stating that an adjacent landowner's signature was required.[86]

The Court cannot find that the Board's decision was illegal or contrary to law. There is no provision in the UDC or the Board rules that mandates that comment letters issued by the Department regarding other land development projects are precedent for future decisions. The Recommendation Report did not

---

[84] *Id.*
[85] *Id.* at 22.
[86] Notice of Decision, at 2.

require that Ms. Snyder or any other neighbor sign the plan or Application.[87]

Therefore, the Court cannot find that the Board erred when it rejected Petitioners'

argument that the Comment Letter required Ms. Snyder's signature on the plan and

Application before the Application was properly before the Board.

**B.      The Record Shows that the Board Did Not Exceed its Jurisdiction.**

"A decision will be reversed on jurisdiction grounds only if the record fails

to show that the matter was within the lower tribunal's personal and subject matter

jurisdiction."[88]  The Delaware General Assembly set forth the Board's jurisdiction

in 9 *Del. C.* §§ 1312-13.  9 *Del. C.* § 1313 provides, in relevant part, that

> The Board of Adjustment shall be empowered to hear and decide:… [i]n specific cases, such variance from any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special conditions or exceptional situations, a literal interpretation of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map.[89]

---

[87] Recommendation Report to the Board of Adjustment.
[88] *Christiana Town Ctr.*, 2004 WL 2921830, at *2 (citing Woolley, Delaware Practice, Volume I, § 921).
[89] 9 *Del. C.* § 1313(a)(3).

Additionally, "[t]he Board of Adjustment shall adopt regulations to govern the organization, procedure and jurisdiction of the Board. The regulations shall not be inconsistent with this title and shall not become effective unless and until approved by the County Executive."[90]

1.   *Public Notice of the Hearing was Sufficient Such That the Board Did Not Exceed its Jurisdiction.*

Petitioners argue that the notice provided to the public regarding the public hearing on the Application was insufficient because Ms. Snyder did not sign the necessary forms.[91] Petitioners contend that the newspaper notice was deficient because it was not published in the newspaper with a reference to Ms. Snyder's property by tax parcel number.[92] Petitioners also contend that the yellow sign posted on the Property was deficient because it did not contain Ms. Snyder's tax parcel name and number as part of the plan and failed to graphically depict her property.[93]

Applicant argues that the notice to the public regarding the public hearing before the Board on the Application was sufficient. Applicant contends that there is no requirement in the UDC or in the Board's rules that mandates that Ms. Snyder sign the plan or Application and that the Department is not bound by its

---

[90] 9 *Del. C.* § 1312.
[91] Pet'rs' Opening Br., at 23; *See supra* Part IV.A.2.
[92] Pet'rs' Opening Br., at 24.
[93] *Id.*

decision in the Comment Letter because no new setback is being created on Ms. Snyder's property.[94] Applicant asserts that because Petitioners' argument that Ms. Snyder's signature was required on the plan and Application fails, the notice of the public hearing before the Board regarding the Application is not deficient.[95]

The requirements to perfect public notice for land development applications prior to a public hearing before the Board are set forth in UDC § 40.31.320(F).[96] Additionally, UDC § 40.31.340 requires that the notice of the public hearing be posted on all properties affected by a variance and that the notice identify all properties affected by the variance.[97] The Board relied on the Recommendation

---

[94] Defs.' Answering Br., at 24.

[95] *Id.*

[96] UDC § 40.31.320(F)(2)(c) provides:

> The applicant shall erect a posted notice sign for all major and minor land development plans within ten (10) days of submission of a completed initial exploratory sketch plan to the Department…
>
> c. The sign shall depict the lot configuration of residential applications or building footprint with square footage, paving, and landscaping in the case of nonresidential applications. The applicants name and phone number, the name of the plan, and the tax parcel number (s) shall be prominently displayed on the sign…

[97] UDC § 40.31.340(B)(4)(c) provides that

> …[t]he applicant shall erect a public hearing posted notice sign on all subject properties at least ten (10) days in advance of a public hearing…
>
> c. The sign shall depict the lot configuration of residential applications or building footprint with square footage, paving, and landscaping in the case of nonresidential applications. The applicants name and phone number, the name of the plan, the application number, and the tax parcel number(s) shall be prominently displayed on the plan…

30

Report issued by the Department to determine that Ms. Snyder's property was not

affected by the proposed variances when it found that

> …[the Department] is required by the UDC to review this project and, in doing so, did not issue a deficiency letter stating that an adjacent landowner's signature was required.  The Board is satisfied that the requirements of [the] UDC with respect to the necessity for Mrs. Snyder's signature on the documents, and the notice of this application, have been met…[98]

Petitioners' argument that the public notice is deficient is predicated on a

finding that the Board committed legal error in proceeding to hear and approve the

Application without Ms. Snyder's signature on the plan or Application.  Petitioners

do not allege that the public notice of the hearing before the Board was deficient in

any other way under the requirements of the UDC.  The Court has found that the

Board did not commit legal error in determining that Ms. Snyder was not required

to sign the plan and Application.[99]  Therefore, the Court cannot find that the Board

exceeded its jurisdiction when the Board proceeded to hear the Application based

upon the notice given of the public hearing before the Board.

2.   *The Board did not Exceed its Jurisdiction when it Ruled Upon the Merits of the Arguments Raised in the February 24, 2014 Letter.*

Finally, Petitioners argue that the Department deprived Petitioners of their

appellate rights when it did not respond in writing to the February 24, 2013 Letter

---

[98] *Id.*

[99] *See supra* Part IV.A.2.

in which Petitioners requested that the Department determine that the Application was not properly before the Board because it lacked Ms. Snyder's signature.[100] Petitioners assert that the Department "was required to issue, in writing, a decision or response to the [February 24, 2013 Letter] within twenty (20) days of the receipt of the submission."[101] Petitioners rely upon UDC § 40.30.320 and § 40.31.330 for their claim that the Department, and not the Board, is the sole authority to make the determination that the Application was not properly before the Board.[102] Petitioners contend that the Board impermissibly exceeded its jurisdiction in making the determination itself at the beginning of the March 3, 2014 public hearing.[103] Petitioners argue that, when no written decision was furnished, "Petitioners were not afforded the opportunity to respond to or appeal th[e] decision. Appeal would have been to the Planning Board…so an entire appellate proceeding was side-stepped, depriving Petitioners of due process and the public of notice and an opportunity to be heard."[104]

Applicant argues that the Department was not required to respond to the February 24, 2014 Letter in writing and that, to the extent that Petitioners allege that the Department committed legal error, the complaint is not properly part of the

---

[100] Pet'rs' Opening Br., at 25.
[101] *Id.*
[102] Pet'rs' Reply Br., D.I. 31, at 17.
[103] *Id.*
[104] Defs.' Answering Br., at 26.

Court's consideration regarding the Board's decision.[105] Applicant alternatively

argues that, even if the Department was required to respond to the February 4,

2014 Letter, the Department responded appropriately when

> [t]he Department received both the SLD application (the application that initiates the record plan approval process) and the variance application and returned neither for lack of the appropriate signatures. Moreover, if the Department considered the variance application lacking something as fundamental as the required land owner signature, it would not have recommended approval of the application.[106]

Applicant contends that the Board properly heard the merits of the arguments set

forth in the February 24, 2014 Letter on the record and rejected them.[107] Applicant

asserts that "with their appeal to this Court, [Petitioners] are now having the matter

further reviewed. Petitioners cannot claim any prejudice or lack of due

process."[108]

Section 40.31.330 of the UDC provides, in part, that "…whenever a

response or decision is required by the Department, it shall be issued in writing

within twenty (20) days of receipt of a complete submission. This requirement

may be waived by mutual consent of the Department and the applicant."

Petitioners have not identified and the Court is unaware of a particular statute or

---

[105] *Id.*
[106] *Id.* at 27-28.
[107] *Id.* at 26.
[108] *Id.*

Board rule that requires that the Department respond to the February 24, 2014 Letter.

Moreover, there is no provision adopted by the Board in the UDC or the Board rules that mandates that the Department, and not the Board, be the sole authority to resolve the issues set forth in the February 24, 2014 Letter. In fact, the February 24, 2014 Letter itself undermines Petitioners' argument. Petitioners addressed the February 24, 2014 Letter to the "Members of the Board of Adjustment" and the "New Castle County Department of Land Use," the Letter begins with the salutation "Dear Members of the Board of Adjustment," and concludes with an ambiguous request that "…you issue a written determination no later than March 3, 2014."[109] Based upon the arguments and authority presented, the Court cannot conclude that the Board exceeded its jurisdiction in addressing the February 24, 2014 Letter at the March 13, 2014 public hearing.

Additionally, the Court cannot find that the Board's determination at the March 13, 2014 public hearing deprived Petitioners of due process. The record demonstrates that the Board heard argument from both parties regarding whether or not the hearing should proceed and, following the argument, the Board recessed

---

[109] February 24, 2014 Letter to Members of the Board of Adjustment and the New Castle County Department of Land Use, at 2.

for an executive session to "get some legal advice first."[110]  Upon reconvening, the

Chairman of the Board announced

> …We have in effect a motion for a continuance to permit the procedures suggested by an objecting member of the public who is represented by counsel or members I guess. And we have a response and some discussion on that. We have a response to that an argument made by the applicant and that's all on the record.  And I don't feel a need to review it in any detail.  I as Chair have the responsibility of determining in many instances when it's necessary to take testimony and when it isn't.  And in this instance I feel there's been enough argument. There's not a need for any additional record on this issue so we won't be taking any testimony with regard to the procedural issue ahead of us…[111]

The Board unanimously voted that it had jurisdiction to hear the Application.[112]

Despite Petitioners' claim that they suffered prejudice because they lacked the opportunity to potentially appeal a determination made by the Department, the record indicates that the Board provided Petitioners the opportunity to be heard on the merits of their argument at the March 13, 2014 hearing.  Although Petitioners' argument that the Department, and not the Board, should have made the determination might be an appropriate issue to raise on direct appeal, the Court is mindful of the limited nature of the *certiorari* proceeding and the function of the General Assembly in determining that no right of direct appeal exists in this

---

[110] *Id.* at 19.
[111] *Id.*
[112] *See supra* notes 11-14; 16-18; 23.

situation.[113]  To examine the matter further "undermines the General Assembly's authority to determine which administrative agencies are subject to direct appeal and which are not."[114]

## VI. CONCLUSION

The Court finds that the Board neither committed legal error nor exceeded its jurisdiction in reaching its decision.   Therefore, the decision of the Board is hereby **AFFIRMED**.


**IT IS SO ORDERED.**


_____
Ferris W. Wharton, Judge

---

[113] *See Black*, 2015 WL 3941464, at *6 (Del. June 29, 2015).
[114] *Id.*